# Commonwealth *v.* Rush and Harnett, Appellants.

*Criminal law—Making check upon insufficient funds—Act of April 18, 1919, P. L. 70—Evidence—Sufficiency—Ratification—Effect.*

The offense created by Act of April 18, 1919, P. L. 70, making it a misdemeanor for any person, with intention to defraud, to make or draw or utter or deliver any check, draft or order for payment of money on any bank, or other depository, knowing that the maker had not sufficient funds with such bank for payment of the check, is a new one, and the statute is to be strictly construed.

The forbidden act is not a continuing offense. When the making or delivering of the check takes place, the offense is complete.

The first fact to be established by the Commonwealth, in a prosecution under the act, is the making or delivery of the check, draft or order.

Ratification cannot take the place of participation in the offense which the statute makes necessary.

Upon the indictment of defendants, charged with making or drawing a check upon a bank in which they had insufficient funds for its payment, where no evidence was introduced to show that the defendants signed the check, or that they ever heard of it until after the prosecutor came into possession of it, evidence that they ratified the wrong, and tried to procure funds for payment of the check was insufficient to sustain a conviction.

Argued October 4, 1921. Appeals, Nos. 12 and 13, April T., 1922, by defendants, from judgment of Q. S. Allegheny County, Sept. Sessions, 1920, No. 371, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Charles W. Rush and A. A. Harnett. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Reversed.

Indictment for making or drawing a check upon a bank in which the maker had insufficient funds for its payment. Before EVANS, J., 47th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

404, (1922).]     Verdict—Opinion of the Court.

Verdict of guilty, upon which judgment of sentence was passed, Defendants appealed.

*Errors assigned* were various parts of the charge, rulings on points, and in overruling motions for new trial and in arrest of judgment.

*Thomas M. Marshall,* and with him *Joseph D. Hern,* for appellants.—The fundamental error was in giving the Fraudulent Check Act a broad and liberal construction. Criminal statutes are to be strictly construed: Com. v. Lavery, 247 Pa. 139; Com. v. Brown, 54 Pa. Superior Ct. 439.

*W. E. Walsh,* Assistant District Attorney, and with him, *Harry H. Rowand,* District Attorney, for appellee.

OPINION BY HENDERSON, J., March 3, 1922:

The defendants were indicted and convicted under the Act of April 18, 1919, P. L. 70, which makes it a misdemeanor for any person with the intention to defraud to make or draw or utter or deliver any check, draft or order for the payment of money on any bank, banking institution, trust company or other depository, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer had not sufficient funds in or credit with such bank, for the payment of the check. The offense thus created is a new one for which severe penalties are imposed. It is but restating a familiar principle to remark that such a statute must be strictly construed and that a defendant charged with its violation cannot be made responsible beyond the prohibitions expressed in the enactment. It should be observed too that the forbidden act is not a continuing offense. It must be performed "with the intention to defraud" and "at the time of such making, drawing, uttering or delivering" there must have been knowledge on the part of the person so making, etc., that he had not

sufficient funds in or credit with the bank for the payment of such check. When such making or delivering takes place the offense is completed and the provisions of the statute become operative. The first fact to be established by the Commonwealth in such a prosecution is the making or delivery of the check, draft or order. The complaint of the appellants is that there was a failure of the Commonwealth to introduce evidence sufficient to prove that they or either of them made or delivered the check in question to the payee named therein or to any other person. The evidence shows that a corporation known as the Federal Securities Underwriting Corporation had been organized by one E. E. Anderson, and that C. W. Rush, one of the defendants, was secretary, and A. A. Harnett, the other defendant, treasurer of the corporation. It appeared in the evidence that the corporation was formed to build an apartment house, a business with which Anderson claimed he was familiar. Anderson was the managing director of the company and as stated in the evidence, Rush and Harnett took their instructions from him. On the 23d of June, 1920, Anderson appeared at the place of business of the prosecutor, Mr. Helfer, and bought a diamond ring valued at $269 for which he gave a check for $275 purporting to be drawn by the Federal Securities Underwriting Corporation, signed, C. W. Rush, secretary, countersigned, A. A. Harnett, treasurer. The check was drawn on the Mellon National Bank of Pittsburgh, Pa. Mr. Helfer gave to Anderson the difference between the price of the ring and the amount of the check. Anderson had dealt before with him and no questions were asked with respect to the check. It was presented the next day at the bank to be certified and the holder was then notified that there was not a sufficient amount of deposit to pay it. Notice was thereafter given to Harnett and Rush that the check had not been paid. The prosecutor testified that the first time he saw Rush was about six or seven days after the check transaction. In a conversation with him and

Harnett at that time, it was alleged, they said the check would be made good when Anderson came back from New York where he went soon after the purchase of the ring. This was the only conversation the prosecutor had with Rush prior to the bringing of the prosecution. He saw Harnett on several occasions and his clerk, Kappel, spoke to Harnett in regard to the check. The substance of their testimony with respect thereto was that Harnett said he would try to get in touch with Anderson and take the matter up and see if the check could not be made good. At another conversation he said: "It will be made good." All of the testimony of the Commonwealth related to conversations; one with Rush and others with Harnett which took place some time after the transaction between Anderson and the prosecutor when the ring was obtained. No evidence was introduced to show that Rush or Harnett signed the check or that they ever heard of it until after the prosecutor came in possession of it. The theory on which the case was presented seems to have been that the statement of Rush that Anderson would make the check good and of Harnett that it would be made good or that he would pay it was a ratification of the act of Anderson in passing the check and an adoption of the signatures as their own, from which it followed as contended that it made no difference for the purposes of the case whether the signatures were those of Rush and Harnett or not. Each of the defendants testified that he did not sign the check and that the signature of his codefendant was not genuine; that the check and the signatures were in the handwriting of Anderson. Harnett testified that he never knew of the existence of the check until Helfer notified him that he had it and that it had been refused at the bank. Rush testified that the first time he saw the check was the day before he was arrested. Expert evidence was offered by the defense to show that the signatures were not those of Rush and Harnett, but that all of the writing on the instrument

was done by Anderson. None of the evidence in the case tends to show that the signatures were written by Rush and Harnett and the corroborating evidence strongly supports their allegation that they did not sign the check. The Commonwealth failed therefore in the first step in the development of the case. The learned trial judge however submitted to the jury the inquiry whether the defendants had authorized Anderson to sign their names to the check; this instruction being based on the testimony that the defendants had promised that the check would be paid. As it was not seriously contended at the trial that the signatures were genuine, we are unable from the testimony referred to to draw the inference of guilt implied in the instruction of the court. There is no such thing as a vicarious substitution of an offender. The defendants either made and delivered the check, or authorized Anderson to do it, or they are not guilty. Their subsequent knowledge of what Anderson had done does not create guilt, nor do we regard the testimony as sufficient to justify the inference that the check was issued by their direction. The ratification by the defendants suggested in the brief of the learned counsel for the Commonwealth cannot take the place of the participation in the offense which the statute makes necessary. The approval by one of an assault and battery theretofore committed by another does not transfer responsibility for the misdemeanor to the one so approving, nor does the willingness of a relative or friend to compensate for the loss resulting from another's misdemeanor carry with it liability for the crime. The assurance said to have been given by the defendants was apparently for the encouragement of the prosecutor or given in expectation that Anderson would make the transaction good. The testimony relating to Anderson's telegram that he would remit money from New York throws light on the conversations of the defendants with reference to making the check good. The efforts of the defendants to see that the prosecutor was paid or

404, (1922).] Opinion of the Court.

the entertaining of a belief that Anderson would pay the obligation ought not to be assumed to be evidence of authority to Anderson to issue the check for a fraudulent purpose. No motive or advantage to the defendants appears in the transaction and the evidence of authority in Anderson to execute the check should be sufficiently clear to leave no doubt of the fact. The verdict of the jury was probably the result in part of a wide inquiry on cross-examination as to the origin, purposes and management of the corporation with which the defendants were connected; but this examination cast no light on the question whether the defendants had issued or authorized the issuing of the check.

Having carefully reviewed the evidence we are of the opinion that it is not sufficient to support the conviction. It falls distinctly short in the elements which the statute demands as a foundation for the judgment. The fourth assignment of error is sustained.

The judgment is reversed and the defendants are discharged of their recognizances.